**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **United States of America,** | **Criminal No. 06-CR-162** |
| | **(JRT/SRN)** |
| **Plaintiff,** | |
| **v.** | **REPORT & RECOMMENDATION** |
| **Cesar Milian Valencia** | |
| **Defendant**. | |

---

Ann Anaya, Esq., on behalf of Plaintiff

Richard Coleman, Esq., on behalf of Defendant Valencia

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter comes before the undersigned United States Magistrate Judge on Defendants' Motions to Suppress Evidence (Doc. No. 26.)   This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.[1]

## I.      PROCEDURAL BACKGROUND

An indictment dated June 6, 2006, was filed against Defendant charging him with one count of

---

[1]This matter is set to be tried before the Honorable John R. Tunheim, United States District Court Judge for the District of Minnesota, on August 14, 2006.

conspiracy to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and one count of aiding and abetting with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.

Minneapolis Police Officers Mark Beaupre, Kyle Ruud and Brian Thureson testified at the criminal motions hearing.  No exhibits were offered in evidence.

## II.    BACKGROUND

Minneapolis Police Officer Mark Beaupre testified that on May 8, 2006, a Confidential Informant (CI) contacted a fellow officer with information about a person named "Tio" who sold and delivered large quantities of cocaine.  Buyers could order cocaine by placing a call to him.  Tio was described as a Hispanic male, approximately 5'4" to 5'6" and 40 years old.  The CI further indicated that Tio drove an older model red two-door Ford Thunderbird or Mercury Cougar.  In addition, the CI stated that Tio was usually accompanied by a driver, specifically, a younger Hispanic male.  The CI told authorities that Tio stored drugs either on his person or in a trap device in the backseat of his car.

On May 8, 2006, police officers used the CI to arrange a controlled purchase from Tio.  The CI phoned Tio and made arrangements to exchange money for drugs.  Tio indicated that he would come to Brooklyn Center, Minnesota, to the area of Bass Lake Road and June Avenue, with two kilos of cocaine between 6:00-6:45 p.m. that day.

Officer Beaupre called unmarked surveillance teams to position themselves in the area, at the appointed time.  Officer Kyle Ruud assisted in that effort.  At approximately 6:30 p.m., officers observed a red Mercury Cougar with Wisconsin license plates turning off of Bass Lake Road, onto June Avenue.  Two Hispanic males occupied the car and the CI identified Defendant as Tio, who was

2

the passenger in the vehicle.

Officers stopped the car and approached it with guns drawn, ordering the occupants to exit the car. Officer Ruud testified that he identified himself in English and Spanish as a police officer and displayed his badge. Rather than stopping, the car started to back up a distance of five to eight feet, but eventually came to a stop due to the presence of additional unmarked police cars blocking its path. Officers arrested Defendant and the driver. The car was searched in an initial sweep, during which time cell phones, but no drugs, were found. Defendant and the driver were likewise searched and no drugs were found on their persons. Officer Beaupre testified that due to the open location of the car, the busy time of day and the residential setting, it would be best to conduct a more thorough car search in the secure parking lot of the Fourth Precinct.

The car was driven by another officer to the Fourth Precinct parking lot in Minneapolis shortly thereafter. Not long after the car arrived, a canine officer named Hoss arrived. Hoss's partner, Officer Brian Thureson testified that Hoss is a canine officer certified for narcotics detection and has proven himself reliable in detecting narcotics, including cocaine. Officer Thureson first approached the Mercury Cougar without Hoss, making sure the windows were shut and the car was not running to allow the particles inside the vehicle to settle. The officer also testified that no other vehicles were near enough to the Cougar to "contaminate" the scene for purposes of drug detection. Officer Thureson then brought Hoss to the car and performed an exterior search of the vehicle, commanding Hoss to look for drugs. Hoss did not indicate the presence of drugs on the exterior. After giving Hoss a short break, Officer Thureson brought the dog to the front seat of the car, where Hoss gave no indication that drugs were present. Next, Officer Thureson brought Hoss to the backseat. In Officer Thureson's

3

words,  Hoss was "getting birdy," or wanting to sniff the area.  Hoss sniffed a seam in the upper part of the backseat of the car and pawed at the center armrest.  When Officer Thureson opened the armrest, Hoss placed his nose on it and sat down – his signal for a positive indicator for drugs.  Officer Thureson relayed that information to Officer Ruud and removed Hoss.

Officer Ruud searched the armrest area and the trunk.  In the trunk, he pulled away the carpet that lined the area and detected something metallic in the backseat area.  His training and experience led him to suspect that this might be a possible drug trap compartment.  He looked in the backseat, but had difficulty removing the area in question.  This would not be expected in a standard vehicle, but was consistent, in Officer Ruud's experience, with vehicles that have been modified to conceal drugs.  Officer Ruud therefore cut the armrest material and observed a package wrapped in cellophane.  He testified that based on his training and experience, he was familiar with the size of a trap compartment and with the size of two kilos of cocaine.  He believed that two kilos could fit into a backseat trap compartment.

The drugs were ultimately removed and tested positive for cocaine.

## III.   DISCUSSION

### A.      Motion to Suppress Statements or Identifications of Defendant

Defendant moves for an order to suppress statements or identifications of Defendant under the Fifth and Sixth Amendments.  No statements or identifications were made.  Accordingly, this portion of Defendant's motion should be denied as moot.  The Court will therefore confine its discussion to the remaining Fourth Amendment challenge.

### B.      Motion to Suppress Physical Evidence

4

Defendant seeks the suppression of evidence found in his car, arguing that there was no probable cause for arrest and that the subsequent search of the vehicle was illegal.

As to the lawfulness of the arrests, the standard for arrest is probable cause, defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause may be based on the "collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." United States v. Twiss, 127 F.3d 771, 774 (8th Cir. 1997). In establishing probable cause, police officers "enjoy substantial latitude in interpreting and drawing inferences from factual circumstances." United States v. Horne, 4 F.3d 579, 589 (8th Cir. 1993), cert. denied, 510 U.S. 1138 (1994). While a bare suspicion of criminal activity is insufficient to establish probable cause, the police need not have enough evidence to justify conviction before making a warrantless arrest. United States v. Morales, 923 F.2d 621, 624 (8th Cir. 1991).

In addition, when a suspect is present for an illegal drug transaction, this fact will support probable cause that the suspect is engaged in a conspiracy to sell illegal drugs. See United States v. Mendoza, (suspect slowly drove by site of drug transaction); United States v. Segars, 31 F.3d 655, 659 (8th Cir. 1994) (suspect arrived when drug courier was expected to arrive), cert. denied, 513 U.S. 1099 (1995). An informant's tip, in conjunction with a controlled buy or other indication of illegal activity, may provide a "substantial basis" for finding probable cause. See United States v. Oropesa, 316 F.3d 762, 768-69 (8th Cir. 2003) (probable cause found where informant revealed that defendant

had sold him drugs and police taped conversations of informant attempting to arrange a drug buy from the defendant).

Here, there was a substantial basis for finding probable cause and officers had more than a "bare suspicion of criminal activity" to arrest Defendant.   The CI provided officers with a description of a person, known as Tio, who allegedly sold large quantities of cocaine.   The CI stated that Tio drove an older model red, two-door Ford Thunderbird or Mercury Cougar.   He indicated that Tio traveled in the company of a younger Hispanic male driver.   In addition, the informant noted that the drugs would be either on Tio's person or in a trap device in the backseat.   Officers used the informant to arrange a controlled drug purchase at a specific location and time. Officers conducted surveillance and the informant was present.   At the designated place and time, Defendant arrived in a red Mercury Cougar. Two Hispanic males, one of them Defendant, occupied the vehicle.   The CI identified Defendant. Based on all of the above, the officers had probable cause to arrest Defendant.

Warrantless searches of arrestees are valid when conducted incident to a lawful custodial arrest.  New York v. Belton, 453 U.S. 454, 461 (1981); United States v. Pratt, 355 F.3d 1119, 1124 (8th Cir. 2004).   A full search of an arrestee for both weapons and evidence may be made during a search incident to arrest.   See United States v. Robinson, 414 U.S. 218, 229 (1973). The scope of a search incident to arrest is not limited to the arrestee's person, but extends to the area within the arrestee's immediate control.   See Chimel v. California, 395 U.S. 752, 763 (1969).   Searches of vehicles are allowed under the "immediate control" doctrine even when the occupant of the vehicle has exited the car.   See Thornton v. United States, 541 U.S. 615, 622-23 (2004).

Here, Defendant was lawfully arrested.   Officers were permitted to search both his person and

the vehicle.  The CI had told officers that Defendant would carry the drugs on his person or in a secret

compartment in the car.  Officers found no drugs on Defendant's person, nor during a cursory search of

the vehicle.  The car was then brought to the Minneapolis Fourth Precinct lot.   It would have to be

moved in any event, as both occupants were under arrest.   The officers planned to further search the

vehicle and Hoss, a certified drug-sniffing dog, arrived to assist in the detection of drugs.

Under the Fourth Amendment, seizures of property in which a person has a legitimate privacy

interest are valid only when police reasonably suspect the property constitutes evidence of criminal

activity.  See United States v. Place, 462 U.S. 696, 706 (1983).  The Supreme Court has determined

that the use of a drug-sniffing dog is valid because there is "no legitimate privacy interest" in possessing

contraband and a dog only reveals the presence of contraband.  See Illinois v. Caballes, 543 U.S. 405,

407 (2005).

A drug dog's identification of drugs in a defendant's car provides probable cause that drugs are

present, entitling the officers to search the vehicle pursuant to the automobile exception to the warrant

requirement.  United States v. Alexander, 448 F.3d 1014, 1017 (8th Cir. 2006); United States v.

Blaylock, 421 F.3d 758, 769 (8th Cir. 2005), cert. denied, __ U.S. __, 126 S.Ct. 1108 (2006).  The

exception likewise applies to the inventory search conducted after a vehicle is towed.  United States v.

Sanchez, 417 F.3d 971, 976 (8th Cir. 2005). Here, the officers did not need to obtain a warrant to

make a valid search.  The drugs were found during the search and should not be subject to

suppression.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

    **1.**      Defendant's Motion to Suppress Evidence [Doc. No. 26] be **DENIED, in part**, as it relates to the search and seizure of physical evidence and **DENIED AS MOOT, in part**, as it relates to the suppression of statements or identifications of Defendant.

Dated: August 1, 2006

                        <u>s/Susan Richard Nelson</u>
                        SUSAN RICHARD NELSON
                        United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by **August 14, 2006** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.